Jim Walter Resources, Inc. ("Jim Walter"), is the defendant in an action pending in the Jefferson Circuit Court, Bessemer Division. It appeals from an order denying its motion to compel arbitration.[1] We reverse and remand.
 I. Facts and Procedural History
During his employment with Jim Walter, Victor Argo entered into an automatic-payroll-deduction plan, whereby a portion of his paycheck would be deducted and deposited into his savings account with the Sloss Federal Credit Union.[2] The payroll-deduction plan was offered as an employee benefit, and Argo participated in the plan for several years.
On December 19, 1996, Argo sued Jim Walter, alleging conversion, fraud, and breach of contract, all related to its administration of the payroll-deduction plan. The claims were based upon an allegation that Jim Walter had failed to transfer the deductions to the credit union in a timely manner. Argo sued both as an individual and as a representative of those similarly situated.
On February 7, 1997, Jim Walter answered, pleading as an affirmative defense that the claims were "barred by [Argo's] failure to utilize the grievance and arbitration procedure contained in the collective bargaining agreements between [Jim Walter] and the union which represented the plaintiff and other bargaining unit employees." Jim Walter simultaneously moved to vacate the court's conditional order certifying a class and removed the case to the United States District Court for the Northern District of Alabama, arguing that the payroll-deduction plan was covered under a January 1994 collective bargaining agreement ("CBA") entered into by Jim Walter and the United Mine Workers of America ("UMWA").[3] In its notice of removal and in its accompanying brief, Jim Walter referred to the arbitrability of Argo's claims. Thereafter, Argo moved to remand the case to the state court, arguing that the CBA was inapplicable because, he contended, the underlying claims did not involve the obligations and duties set forth in the CBA. On April 11, 1997, the parties' attorneys met, pursuant to Rule 26(f), Fed.R.Civ.P., to formulate a discovery *Page 1169 
plan; the report of the parties' planning meeting was filed on April 21, 1997. Included in the report was the statement of the parties: Argo argued that his claim regarding Jim Walter's alleged failure to timely transfer payroll deductions was not preempted by the CBA; and Jim Walter argued (1) that the transfer of funds was timely and (2) that Argo must resolve his complaint through the grievance procedure provided for in the CBA. In September 1997, the federal district court remanded the case to the state court.[4]
On December 15, 1997, Jim Walter filed a motion to stay the proceedings and to compel arbitration, pursuant to the terms of what it alleged to be a "valid, irrevocable, and enforceable contract entered into by Argo, through his bargaining representative." The motion was accompanied by an affidavit from the UMWA representative, wherein he stated that Argo's claims were encompassed by the CBA's arbitration provision. Argo filed an opposition to the motion to compel arbitration, arguing (1) that the dispute was not within the terms of the CBA and (2) that Jim Walter had waived its right to compel arbitration. On June 23, 1998, the trial court held a hearing and afterwards entered an order denying Jim Walter's motion to compel arbitration. The record does not reflect the court's reason for denying the motion to compel arbitration; the court merely made an entry on the case action summary stating that the motion had been denied.
 II. Analysis
Jim Walter argues that the trial court erred in denying its motion to compel arbitration because, it says, an arbitration provision in the CBA encompasses Argo's claims.
In 1994, the UMWA and Jim Walter entered into a CBA governing hours of work, wages, and other terms and conditions of employment. The CBA also outlined grievance procedures and dispute-resolution procedures, expressly stating that any unresolved disputes would be submitted to arbitration;[5] the CBA further established that all disputes related to wages and terms and conditions of employment were governed by the CBA's dispute-resolution process.
Jim Walter argues that the payroll-deduction plan is a benefit of employment, that it is closely related to wages and has been adopted into the CBA through custom, and that it is, therefore, subject to the grievance procedures set forth in the CBA. In support of this argument, Jim Walter offered the uncontradicted affidavits of Michael Johnson, Jim Walter's industrial relations supervisor, and John Stewart, the UMWA representative. Both Johnson and Stewart stated that any complaints regarding the manner in which Jim Walter managed payroll deductions were subject to the grievance procedures set forth in the CBA. Argo presented nothing to dispute this assertion, other than a copy of the federal court's order remanding the case to the state court and a mere allegation *Page 1170 
that his claims are not precluded by the CBA.
Upon close review, Argo's claims appear to challenge the manner in which Jim Walter administered a wage-related employee-benefit program, specifically, a payroll-deduction plan. The CBA clearly states that "all disputes and claims which are not settled by agreement shall be settled by the `Settlement of Disputes' Article . . . without recourse to the courts." Accordingly, we conclude that Argo's claims are subject to the arbitration provision contained within the CBA.
Argo argues that Jim Walter waived any right it may have had to compel arbitration, by not moving in the federal court to compel arbitration. In support of that argument, Argo cites Exparte Hood, 712 So.2d 341 (Ala. 1998).
In determining whether a party has waived its right to arbitrate, this Court has held:
 "It is well settled under Alabama law that a party may waive its right to arbitrate a dispute if it substantially invokes the litigation process and thereby substantially prejudices the party opposing arbitration. Whether a party's participation in an action amounts to an enforceable waiver of its right to arbitrate depends on whether the participation bespeaks an intention to abandon the right in favor of the judicial process, and, if so, whether the opposing party would be prejudiced by a subsequent order requiring it to submit to arbitration. No rigid rule exists for determining what constitutes a waiver of the right to arbitrate; the determination as to whether there has been a waiver must, instead, be based on the particular facts of each case."
Companion Life Ins. Co. v. Whitesell Mfg., Inc., 670 So.2d 897,899 (Ala. 1995) (citations omitted). The courts will not lightly infer a waiver of the right to compel arbitration; thus, the burden on the party seeking to prove waiver is a heavy one.Mutual Assurance, Inc. v. Wilson, 716 So.2d 1160 (Ala. 1998).
The present case, while factually somewhat similar, is clearly distinguishable from Ex parte Hood. In Ex parte Hood, the defendant failed to give notice of its intention to enforce the arbitration agreement until three months after the case had been removed to the federal court and two months after the parties' counsel had met to discuss how the federal litigation would proceed. This Court stated:
 "We might assume that if [the defendant] Golden had immediately followed its removal with service of its answer pleading an arbitration defense, such action would have been sufficient to put Hood on notice that Golden still intended in the federal court to reserve its right to seek arbitration. Cf. Terminix Int'l Co. v. Jackson, 669 So.2d 893, 896 (Ala. 1995) (holding that the plaintiff did not establish a waiver where the defendant's answer had put the plaintiff on notice of an arbitration defense). Filing an answer at such a time might have indicated that Golden intended to pursue arbitration instead of a federal judicial remedy, and it would have given Hood the opportunity to avoid spending the resources necessary to have the case remanded to the state court for a trial. As it was, Golden removed the case to the federal court and proceeded as if it was preparing for a judicial resolution of Hood's claim. Golden's answer pleading the arbitration agreement simply came too late, after Golden had substantially invoked the judicial process, to the substantial prejudice of Hood."
712 So.2d at 346. Under the particular circumstances of Ex parteHood, this Court concluded that the defendant, by its unexplained delay, after removal, in seeking to resolve the controversy through arbitration, had waived its right to compel arbitration.
As noted earlier in this opinion, Jim Walter asserted the affirmative defense of arbitration in its initial answer. *Page 1171 
See Ex parte Merrill Lynch, Pierce, Fenner Smith, Inc., 494 So.2d 1,3 (Ala. 1986) (indicating that a party clearly has not waived the right to arbitrate if it has asserted that right in its initial answer on the merits). Jim Walter referred to arbitration in its notice of removal and in its discovery-plan report. We can find no persuasive evidence indicating that Jim Walter intended to waive or abandon its right to seek arbitration in accordance with the grievance procedure set forth in the CBA.
For the foregoing reasons, the trial court's order denying Jim Walter's motion to compel arbitration is reversed and the cause is remanded.
REVERSED AND REMANDED.
Hooper, C.J., and Maddox, Houston, See, Lyons, and England, JJ., concur.
Cook, J., dissents.
[1] A direct appeal is the proper procedure by which to challenge a trial court's denial of a motion to compel arbitration. A.G. Edwards Sons, Inc. v. Clark, 558 So.2d 358
(Ala. 1990).
[2] In his brief, Argo refers to the credit union as "Jim Walter Credit Union." However, the original complaint lists Sloss Federal Credit Union as the banking institution used by Argo.
[3] Argo's brief refers to his union as "United Steel Workers of America, AFL-CIO, Lodge Number 2140."
[4] The federal court's order states, in pertinent part:
 "Because these claims do not implicate obligations or duties created by the express or implied terms of the relevant Collective Bargaining Agreements, there is no basis for federal jurisdiction. Thus, [this case was] improperly removed and the [motion] to remand [is] hereby GRANTED."
[5] The CBA contains the following provisions:
 "In cases where the district representative and the representative of the Employer fail to reach agreement, the matter shall, within 10 calendar days after referral to them, be referred to the appropriate district arbitrator who shall decide the case without delay.
 ". . . [A]ll disputes and claims which are not settled by agreement shall be settled by the `Settlement of Disputes' Article of this Agreement unless national in character in which event the parties shall settle such disputes by free collective bargaining as heretofore practiced in the industry, it being the purpose of this provision to provide for the settlement of all such disputes and claims through the machinery in this contract and by collective bargaining without recourse to the courts."